# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Fred W. Auman, III, Respondent.

Appellate Case No. 2015-001442

Opinion No. 27549
Submitted July 9, 2015 – Filed July 23, 2015

## DISBARRED

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

J. Steedley Bogan, Esquire, of Bogan Law Firm and John S. Nichols, Esquire, of Bluestein Nichols Thompson & Delgado, LLC, both of Columbia, for Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to disbarment.  Respondent requests the disbarment be made retroactive to February 26, 2015, the date he was suspended and transferred to incapacity inactive status.[1] We accept the Agreement and disbar respondent from the practice of law in this state, with conditions that will be set forth more fully below.  The disbarment shall be retroactive to the date respondent was placed on interim suspension and transferred to incapacity inactive status.  The facts, as set forth in the Agreement, are as follows.

---

[1] *See In re Auman*, 411 S.C. 464, 769 S.E.2d (2015).

## Facts

On February 12, 2013, a trust account check in the amount of $2,500 issued by respondent was presented to the bank. The check was paid by the bank despite there being insufficient funds in the account, resulting in an overdraft of $1,453.75. The lack of sufficient funds was caused by respondent's overpayment on a settlement he disbursed in October 2012.

On October 10, 2012, respondent deposited into his trust account a settlement of $25,000 obtained on behalf of a personal injury client. On October 12, 2012, respondent issued a check payable to his law firm's operating account in the amount of $4,000 for his portion of the fees. Respondent failed to inform his bookkeeper he issued the fee check.

On October 17, 2012, the client came to the office to sign the disbursement statement and receive her funds. Because the staff was unaware respondent had already written his own fee check, a second fee check was deposited into the law firm's operating account. Despite the overpayment of funds disbursed on behalf of the client, the trust account was not overdrawn until February 2013. The reason for the delay was that a check disbursed to a third party on behalf of the client was not negotiated until February. The delay created a "float" that kept the balance in the trust account above zero until the check was presented.

Respondent acknowledges his failure to obtain the client's consent to the disbursement of funds on his behalf prior to negotiating his fee check violated Rule 1.5(c), RPC, Rule 407, SCACR.[2] He further acknowledges his failure to discover the overpayment of funds on behalf of the client resulted from his lack of adequate management of his trust account and his failure to conduct required monthly reconciliations.

---

[2] Rule 1.5(c) states: "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses the client will be expected to pay. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

Indeed, during the course of its investigation, ODC's review of respondent's financial records revealed the following violations of Rule 1.15(c), RPC, and Rule 417, SCACR:

1.  Respondent did not conduct monthly three-part reconciliations of his trust account. The two-part reconciliations that his staff did produce showed a negative journal balance month after month, but respondent took no action to determine the cause or rectify the problem.

2.  Respondent did not maintain complete copies of records of trust account deposits or cancelled trust account checks.

3.  Respondent did not maintain complete client ledgers.

Between December 2010 and March 2013, respondent made approximately forty withdrawals from his trust account, by checks payable to his law firm and electronic funds transfers to his law firm operating account, that were not earned fees. Respondent used the funds improperly removed from the trust account for office expenses, advanced costs for clients, payroll, and taxes. The total amount removed by respondent from the trust account for these improper purposes was approximately $270,250. At the time of his interim suspension, respondent should have had approximately $225,367.96 in trust for thirty-five clients. In addition, respondent had issued checks totaling approximately $39,085.87 that had not yet cleared the trust account. The balance in respondent's trust account at the time totaled approximately $53,649.30.

## Law

Respondent's admits the misappropriation of funds from his trust account violated the following Rules of Professional Conduct: Rule 1.15(d)("Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."); Rule 1.15(g)("A lawyer shall not use or pledge any entrusted property to obtain credit or other

personal benefit for the lawyer or any person other than the legal or beneficial owner of that property."); Rule 8.4(b)(It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.); and Rule 8.4(d)(It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.). Respondent also admits the allegations constitute grounds for discipline under Rule 7(a)(1), RLDE (It shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct.). Finally, respondent admits his conduct violates Rule 417, SCACR (financial recordkeeping).

## **Conclusion**

In addition to consenting to disbarment, respondent has agreed to the following conditions:

1. Within two years of the date of the Court's opinion imposing a sanction, respondent will pay restitution in full to a list of clients in the Agreement pursuant to a payment plan approved by the Commission on Lawyer Conduct, or provide proof satisfactory to the Commission that the amount specified as owed to an affected individual or entity has otherwise been satisfied.[3] This restitution totals $241,399.61.

2. Within three years of the date of the Court's opinion imposing a sanction, respondent will pay the costs incurred in the investigation of this matter by ODC, pursuant to a payment plan approved by the Commission on Lawyer Conduct.[4]

---

[3] The Agreement notes the Receiver currently holds some funds in trust. In addition, there are claims pending with the Lawyers' Fund for Client Protection. The Agreement states respondent's restitution obligation to any listed individual or entity will be reduced by the Commission proportionate to any funds paid to that individual or entity from either of these two sources.

[4] The Agreement notes this obligation is separate and apart from any obligation to reimburse the Commission for the Receiver's expenses. The Agreement states respondent's obligation to pay for the Receiver will be determined by the Court at the time of the termination of the Receiver's appointment.

3.  Within three years of the date of the Court's opinion imposing a sanction, respondent will reimburse the Lawyers' Fund for Client Protection for all claims paid to clients on respondent's behalf, pursuant to a payment plan approved by the Commission on Lawyer Conduct.[5]

Finally, respondent has agreed that in addition to the requirements of Rule 30, RLDE, he will not be eligible for readmission until he completes the Bar's Legal Ethics and Practice Program's Law Office Management School and Trust Account School.

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state, retroactive to February 26, 2015. He shall also comply with the conditions set forth in the preceding paragraphs. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**TOAL, C.J., PLEICONES, BEATTY, and HEARN, JJ., concur. KITTREDGE, J., not participating.**

---

[5] The Agreement notes this obligation is separate and apart from any obligation to reimburse the Lawyers' Fund for Client Protection for the Receiver's expenses. The Agreement states that if the Court orders the Lawyers' Fund to pay Receiver expenses, respondent's obligation to reimburse the Lawyers' Fund will be determined by the Court at the time of the termination of the Receiver's appointment.